IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

OBIOMA EKEH,             *

   Plaintiff,                *

v.                                *       Case No. JKS-12-2450

MONTGOMERY COUNTY, MARYLAND.    *

   Defendant.            *

                               *     *     *     *     *     *

**MEMORANDUM OPINION**

Presently pending and ready for resolution are Plaintiff Obioma Ekeh's motion to amend judgment (ECF No. 87) and his motion for attorney's fees (ECF No. 88). The issues have been fully briefed and no hearing is necessary. *See* Loc. R. 105.6. For the reasons set forth below, the motion to amend will be denied and the motion for attorney's fees will be granted in part and denied in part.

**I.     Motion to Amend.**

    **A.     Background.**

Plaintiff brought this action against Defendant Montgomery County (the County), claiming a violation of the overtime pay provision of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 207(a)(2), and seeking unpaid overtime wages, liquidated damages, and attorney's fees and costs. ECF No. 7-4 at 1, 4-5. A jury trial was held on March 16-18, 2016. The jury found for Plaintiff as to unpaid overtime during 2010 and 2012, and for Defendant as to unpaid overtime during 2011. The jury also found that Defendant's supervisors knew or reasonably should have known that Plaintiff was working the overtime hours in 2010 and 2012 for which he was not

compensated. ECF No. 81. The jury awarded Plaintiff a total of 192 hours. *Id.* The court computed, and the parties do not dispute, that this totals $7,344.00. On March 22, 2016, the court entered judgment in favor of Plaintiff in the amount of $7,344.00. ECF No. 86.

Plaintiff asks the court to amend the judgment to award liquidated damages in an amount equal to the unpaid overtime. Liquidated damages, while discretionary with the trial judge, are the norm and the burden is on the Defendant to prove that its action was in objective good faith and that it had "reasonable grounds for believing that [its] act or omission was not a violation of FLSA." *Mayhew v. Wells*, 125 F.3d 216, 220 (4th Cir. 1997).

**B.      Pertinent facts.**

This decision is based on the following facts adduced at trial. To the extent that these facts are based on the testimony of witnesses, they were not disputed except as otherwise indicated.

Plaintiff worked as a supply technician for the Defendant's Department of Corrections and Rehabilitation. On a typical workday, Plaintiff made two trips between Boyds, Maryland and Rockville, Maryland, transporting inmates' laundry, property, mail, medical records and other items. From September 2000 to June 2010, Plaintiff frequently worked more than eight hours per day to complete his job assignments and Plaintiff's supervisor routinely allowed Plaintiff to receive overtime pay.

Deputy Warden Christine Johnson became Plaintiff's supervisor in 2010. In September 2010, after Plaintiff's repeated contentions that he was unable to complete his workday during his regular shift, Ms. Johnson rode with him for a day. She testified that he completed his tasks without the need for overtime. Plaintiff, in contrast, testified that he did not complete his tasks the day that Ms. Johnson rode with him, but he did not dispute that she instructed him to go

home at the end of his regular shift. Other employees who substituted for Plaintiff completed his tasks during the eight-hour time frame.

Defendant's overtime policies, which are contained in the County's agreement with its employees' union (ECF No. 89-4) and the County's personnel regulations (ECF No. 89-5), require advance authorization of overtime. Ms. Johnson informed Plaintiff of this policy, gave him her home, work, and mobile phone numbers, instructed him to call her when a situation arose that would require him to work overtime, and advised him that she would not approve overtime unless he obtained her prior authorization. On one occasion, she specifically ordered Plaintiff to leave work at 7:30 p.m., but he called her at 10:00 p.m. and told her that he was still working. Captain Gail David, who substituted for Ms. Johnson during an illness, told Plaintiff that overtime was not authorized for his position and had to be approved in advance. Captain David also told Plaintiff that he should prioritize his work if he was unable to perform all tasks during his regular shift. A union representative also told Plaintiff that he should go home at the end of his shift. Plaintiff did not protest Ms. Johnson's denials of overtime to her supervisor, Warden Robert Green.

At first, Plaintiff reported his overtime to Ms. Johnson by email after the fact, and in the official County timekeeping system. However, Ms. Johnson disapproved it and repeatedly told Plaintiff that he could complete his duties during his regular shift, that he worked too slowly, and that she would not approve overtime except in advance and only for special circumstances. Plaintiff continued to work overtime. He knew that overtime could only be reported in the County's official timekeeping system and that County policy prohibited him from working overtime without permission. Despite this, he began to document his overtime hours by time-stamping the Inmate Property Transfer Sheets, which were documents used to track the location

of inmate property. Plaintiff left the Inmate Property Transfer Sheets with the supervisor of property records at the end of his workday. These documents were not designed to record an employee's time, had not previously been used for that purpose, and Plaintiff did not tell Ms. Johnson that he was using them to document his overtime. Ms. Johnson at times reviewed the Inmate Property Transfer Sheets, but she testified that they are not normally time stamped and Ms. Johnson did not attend to the time stamps.

### C. Discussion.

As noted, the question whether Defendant acted with objective good faith and had reasonable grounds to believe that it was complying with the requirements of the FLSA is committed to the trial court's discretion. *Mayhew*, 125 F.3d at 220. Good faith "requires that the employer first take active steps to ascertain the dictates of the FLSA and then move to comply with them." *Lockwood v. Prince George's County*, 217 F.3d 839, 2000 WL 864220, at *6 (4th Cir. 2000) (internal quotation marks omitted). The existence of a policy prohibiting overtime is not sufficient to avoid liquidated damages where the employer makes no effort to enforce the policy. *Carter v. City of Charleston, South Carolina,* 995 F. Supp. 620, 622 (D. S.C. 1997). However, liquidated damages may be denied where the court determines that the failure was "in good faith and predicated upon such reasonable grounds that it would be unfair to impose upon [the employer] more than a compensatory verdict." *Mayhew*, 125 F.3d at 220. A finding that the employee failed to approach the employer to seek overtime, or that the employer did not act with reckless disregard of the FLSA, will support a finding of good faith. *Jordan v. GoBo, Inc.*, No. 6:09-cv-00059, 2010 WL 1816361, at *8 (W.D. Va. Apr. 30, 2010).

Both parties here rely on cases in which there was a question of whether the employer knew that the employee was subject to the FLSA, which is an issue not presented here. Neither

party identifies, and the court has not found, any case discussing the unique situation presented here, where Defendant was undisputedly aware that Plaintiff was subject to the FLSA, and took what should have been effective measures to prevent him from working overtime. Plaintiff's supervisors went to great lengths to advise Plaintiff of the limited circumstances under which he could work overtime and specifically instructed him not to work overtime absent those circumstances. Plaintiff nevertheless accrued overtime in disregard of both established County policy and the direct orders of his supervisors. Supervisors should be entitled to assume that employees will follow clear directions, and Plaintiff's insubordination in accruing unauthorized overtime leads to the conclusion that the denial of overtime compensation was reasonable and occurred under circumstances that would make it unfair to impose more than a compensatory verdict. *See Mayhew*, 125 F.3d at 220.

  Plaintiff places heavy emphasis on the jury's finding that his supervisors knew or should have known about his overtime hours. However, the employer's actual or constructive knowledge of the overtime hours is an element of the FLSA action; if such a finding also mandated an award of liquidated damages, the statute would not leave that question to the court's discretion. Plaintiff also claims, without supporting authority, that Defendant's policy that overtime must be pre-approved is illegal under the FLSA. While the legality of Defendant's policy was, of course, not litigated here, the evidence showed that the policy was the subject of a collective bargaining agreement with the union by which Plaintiff was represented. *See Koelker v. Mayor and City Council of Cumberland,* 599 F. Supp. 2d 624, 638 (D. Md. 2009) (applying the FLSA's good faith exception where the compensation practice was known to the parties and was the subject of collective bargaining). While an employee cannot waive his right to overtime under the FLSA, the fact that Plaintiff agreed and understood that he could not claim unapproved

5

overtime weighs heavily in the determination of fairness with regard to liquidated damages, as well as the employer's good faith in denying the overtime. An employee who has chosen to bypass a policy to which he has agreed should not obtain a premium on any recovered overtime payments. For these reasons, Plaintiff's motion to amend judgment to include an award of liquidated damages is denied.

## II.     Motion for Attorney's Fees.

Plaintiff was represented at various times in this litigation by four different attorneys, and seeks fees related to each attorney. He also seeks costs.

The payment of attorney's fees and costs to employees who prevail on FLSA claims is mandatory, 29 U.S.C. § 216(b),[1] while the amount awarded is discretionary. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983); *Burnley v. Short*, 730 F.2d 136, 141 (4th Cir. 1984) (citing *VanDyke v. Bluefield Gas Co.*, 210 F.2d 620, 622 (4th Cir. 1954)). To recover attorney's fees and costs, a plaintiff must be a "prevailing party," a threshold question for which the Court accords a "generous formulation." *Hensley*, 461 U.S. at 433.[2] A plaintiff is a prevailing party for the purpose of a attorney's fees award if the plaintiff succeeds "on any significant issue in litigation which achieves some of the benefit . . . sought in bringing suit." *Hensley*, 461 U.S. at 433 (citation omitted).

Where, as here, a plaintiff has shown that he is a prevailing party, the court must then determine what fee is reasonable. *Hensley*, 461 U.S. at 433. The starting point for establishing the proper amount of an award is the lodestar, "the number of hours reasonably expended on

---

[1] In an FLSA action, "[t]he court . . . shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b).

[2] Although *Hensley* explains the standards of "prevailing party" under 42 U.S.C. § 1988, *Hensley* extends the standards to "all cases in which Congress has authorized an award of fees to a 'prevailing party,'" *Hensley*, 461 U.S. at 433 n.7, and its standards are therefore pertinent to an award of fees under the FLSA.

6

litigation multiplied by a reasonable hourly rate." *Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 174 (4th Cir. 1994) (citing *Hensley*, 461 U.S. at 433). "When plaintiff prevails on only some of the claims made, the number of hours may be adjusted downward; but where full relief is obtained, the plaintiff's attorney should receive a fully compensatory fee . . . ." *Rum Creek*, 31 F.3d at 174 (citing *Hensley*, 461 U.S. at 435). The court must adjust the number of hours to delete duplicative or unrelated hours, and the number of hours must be reasonable and represent the product of "billing judgment." *Rum Creek*, 31 F.3d at 175. To determine the reasonableness of the number of hours and the hourly rate, the court considers twelve factors:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Rum Creek*, 31 F.3d at 175 (citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974) ("*Johnson* factors"); *Daly v. Hill*, 790 F.2d 1071, 1075 n.2 (4th Cir. 1986)).

Plaintiff requests the payment of 63.9 hours for attorney Kevin Plessner. ECF No. 94-1. Mr. Plessner attests that he was required to review voluminous records and that significant additional work was required to address Defendant's allegations of misconduct by Plaintiff, some of which, he acknowledges, is "largely [non]compensable under the scope of this FLSA action." ECF. No. 94-1 at 2. Defendant notes, correctly, that Mr. Plessner does not claim to have exercised billing judgment and that his hours are excessive.[3] The total of 26.6 hours for the

---

[3] Defendant relies heavily on the parties' unsuccessful settlement negotiations in seeking fee reductions. While consideration of settlement negotiations in deciding fee petitions is discretionary, *McAfee v. Boscar*, 738 F.3d 81, 90 (4th Cir. 2013), *as amended* (Jan. 23, 2014), Defendant's settlement offer here was not made pursuant to Federal

complaint, which contained untenable claims, and the amended complaint is indeed excessive and will be reduced to 7 hours. Also claimed are an excessive 20 hours for discovery responses; this will be reduced to 5 hours.

The hourly rates used to calculate the amount of attorney's fees must also be reasonable. *Hensley*, 461 U.S. at 433. The parties do not dispute the $190 hourly rate requested for Mr. Plessner, and this rate is within the guideline rates set forth in Appendix B of the Local Rules. This hourly rate is also consistent with application of the relevant *Johnson* factors to this case, including the skill requisite to perform the legal services, the customary rates for such services, and the experience, reputation, and ability of the attorneys. Mr. Plessner's lodestar amount will be based on 29.3 hours, reduced by 25% to account for billing discretion and the possibility that some of his time was devoted to non-FLSA issues. The lodestar total for Mr. Plessner is $4,175.25.

On behalf of attorney James Kestell, who died during the pendency of the case, 40.5 hours at a rate of $475 is requested. ECF Nos. 94-2 & 94-3. However, the spreadsheet that contains Mr. Kestell's time (ECF No. 94-3) shows only 30.3 hours, and this number will be used. Mr. Kestell's hours are supported by an affidavit from attorney Tyler Freiberger, who worked with Mr. Kestell on the case. *Id*. Although Defendant claims that these hours should be excluded in their entirety as inadequately supported, Mr. Freiberger attests that he found the details of the hours in Mr. Kestell's computer records, and they are accepted as adequately documented. However, 6 hours related to *pro hac vice* and corrections and 12.3 hours for unspecified research will be deducted, for a total deduction of 18.3 hours. Mr. Kestell's hourly rate will be reduced to $387.50, the middle guideline rate for an attorney of more than 20 years' experience. The

---

Rule of Civil Procedure 68 and the amount of the offer was not adequate to cut off fees under that Rule. In addition, representations regarding attorney's fees put forth for settlement purposes do not bind counsel who subsequently must seek a fee award from the court.

lodestar amount for Mr. Kestell will be further reduced by 20% to account for billing judgment, for a total of $3,720.00.

Mr. Freiberger claims 100.6 hours at an hourly rate of $225. ECF No. 94-2. Defendant contends that both his rate and his hours are excessive, noting that he did not become involved in the case until a month before the originally scheduled trial. Mr. Freiberger's hours will be reduced by 10.5 hours spent on the unsuccessful motion seeking liquidated damages, and 5.75 hours opposing a *de bene esse* deposition that became moot, for a total deduction of 16.25 hours. In addition, his overall non-trial hours will be reduced by 25%, or 13.65 hours, to account for time the court believes is attributable to his relative lack of litigation experience. The lodestar award for Mr. Freiberger's time is 70.7 hours at $187.50, the mid-range of the court's guideline rate. His lodestar total is $13,256.25.

Lawrence Lapidus claims a total of 44.4 hours for himself and 16.75 for his assistants. ECF No. 94-4. Defendant's request that day one of the trial (9 hours) be deducted from Mr. Lapidus's request is reasonable and will be granted. The court will also deduct 0.5 hours devoted to the unsuccessful liquidated damages request. Mr. Lapidus's lodestar amount will be based on 34.9 hours at the rate applied to Mr. Kestell, $387.50, reduced by 20% to account for the exercise of billing judgment, for a total of $10,819.00. Mr. Lapidus's staff's time is not properly documented and will not be awarded.

The court next considers the remaining *Johnson* factors in assessing whether adjustments to the lodestar amount are warranted. Defendant argues that the fee request here is disproportionately large in relation to the judgment. Defendant also asserts that the legal issues in the case were not complex and did not require the extensive time, particularly in discovery and

trial preparation, logged by Plaintiff's attorneys. As noted, however, the court has already eliminated many of these hours.

In determining an award of attorney's fees, a crucial factor is the extent of plaintiff's success. *Brodziak v. Runyon*, 145 F.3d 194, 196-97 (4th Cir. 1998) (citing *Hensley*, 461 U.S. at 440). Where a plaintiff has achieved only partial or limited success, the lodestar amount may be excessive. *Hensley*, 461 U.S. at 436. However, a court may not calculate an award of attorney's fees by means of a purely mathematical comparison between the number of claims presented and the number prevailed upon because "[s]uch a ratio provides little aid in determining what is a reasonable fee in light of all the relevant factors." *Hensley*, 461 U.S. at 435 n.11. Here, the Plaintiff succeeded on two of three years for which he claimed FLSA violations. Although the fee award is significantly higher than the amount of the judgment, there is no rule requiring proportionality between the amount of judgment and the fee award under civil rights statutes. *City of Riverside v. Rivera*, 477 U.S. 561, 573-81 (1986). "A rule that limits attorney's fees in civil rights cases to a proportion of the damages awarded would seriously undermine Congress' purpose" in enacting civil rights laws, namely to ensure that victims of civil rights violations, who very often could not afford to pay counsel at market rates, have effective access to the legal system. *Id.* at 576. The Fourth Circuit has accordingly recognized that "[a]wards of attorney's fees substantially exceeding damages are not unusual in civil rights litigation." *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 328 n.20 (4th Cir. 2006) (citing *Mercer v. Duke Univ.*, 401 F.3d 199, 211-12 (4th Cir. 2005) (affirming $349,244 in attorney's fees awarded in Title IX suit yielding only nominal damage award); *Wadsworth v. Clindon*, 846 F.2d 265, 266-67 (4th Cir. 1988) (affirming $13,317 in attorney's fees awarded in Fair Housing Act suit yielding

$1,000 in compensatory damages)). The same principle applies to FLSA cases. *Cf. Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 558 (7th Cir. 1999).

In sum, having considered the twelve *Johnson* factors, the court finds that neither an upward nor a downward adjustment of the lodestar amount is warranted. Accordingly, the court will award attorney's fees on the basis of the lodestar calculation.

Two additional points raised by Defendant remain. First, Defendant claims that Plaintiff's petition fails to properly organize time by litigation phase. However, the time entries clarify the litigation phase to which they pertain. Second, Defendant notes that Plaintiff did not provide quarterly time statements, but, as Plaintiff notes, this cannot be the basis for a requested deduction absent a request for the statements from the Defendant. Loc. R., App. B, 1.c. n.3.

Plaintiff's request for costs is not disputed by Defendant and thus will merely be evaluated for reasonableness. The charges listed for filing and service of process fees are reasonable and well documented and will be taxed against Defendants. These costs total $373.00.

## III.   Conclusion.

For the foregoing reasons, Plaintiff's motion for attorney's fees and costs is granted in the amount of $31,970.50 for attorney's fees plus $373.00 for costs. Plaintiff's motion to amend judgment is denied.

June 28, 2016  
Date

/S/  
JILLYN K. SCHULZE  
United States Magistrate Judge